**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIM. NO. 23-454** |
| **AIKEEM PALMER** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT AIKEEM PALMER'S MOTION TO REVOKE THE MAGISTRATE JUDGE'S DETENTION ORDER**

Defendant Aikeem Palmer is a member of a theft and robbery crew that repeatedly broke into cargo trailers at night throughout the City of Philadelphia. One theft involved the coordinated heist of over $230,000 worth of newly minted dimes by the defendant and nearly a dozen others. The instant charges come after Palmer has been previously convicted of numerous felony offenses, including offenses committed while on court supervision, and at almost forty years old, Palmer has at most a few months of verifiable work history. Palmer has prior adult convictions for aggravated assault, illegal firearms possession, and drug trafficking (twice). His record stretches back even further to his time as a juvenile, when he was adjudicated delinquent for both robbery and carjacking. Accordingly, based on the crime of violence (Hobbs Act robbery) charged in this case and Palmer's prior record, it is likely that upon conviction, he will qualify as a Career Offender under the Sentencing Guidelines and face an anticipated advisory guideline range of 210-262 months incarceration.

On December 17, 2024, following a hearing, United States Magistrate Judge Craig M. Straw granted the government's motion and ordered that Palmer be detained pending trial. The defendant identifies no basis to disturb that ruling. For the reasons that follow, the government

submits there is no condition or combination of conditions that can assure the defendant's appearance or the safety of the community.

I.    **FACTS**

    A.    **Cargo Thefts and Robbery**

A grand jury indicted defendant Palmer for violations of 18 U.S.C. §§ 371 (conspiracy), 1951 (robbery which interferes with interstate commerce), 659 (theft and possession of items from interstate shipment), 641 (theft of government money), and 2 (aiding and abetting) on December 11, 2024. Probable cause therefore exists to believe the defendant violated these statutes. The anticipated trial evidence clearly demonstrates the defendant's guilt.

    1.    **April 13, 2023 Dime Theft**

A tractor trailer departed the United States Mint on the evening of April 12, 2023 with over $750,000 dollars' worth of newly minted 2023 dimes. The itinerary for the dimes was to go from the U.S. Mint to Florida for distribution. The driver of the truck picked up the dimes on the night of April 12 and parked in a Walmart parking lot off of I-95. The driver then left the area.

Late that night and into the morning of April 13, 2023, Palmer and multiple other accomplices drove to this location, used tire irons to break into the trailer, and unloaded thousands of pounds of dimes. Palmer and others accomplished this by using large trash cans to transfer the dimes to other vehicles. Thousands of dimes were left strewn about the parking lot at the end of theft.

Palmer and his co-defendants communicated extensively by text message, including a seven-person group thread that lasted several months and consisted of over 2,000 text messages (many with audio, video, or photos attached). On that thread, Palmer and his co-defendants planned thefts, texted about them in real time, and then coordinated the selling of the proceeds.

The morning after the dime theft, co-defendant Rakeim Savage sent a group admission to this text message chain (including Palmer) stating "We made it!" and screenshotted an Instagram post detailing the theft as seen below:



In this same group chat, on the morning after the theft, co-defendant Douglas Mathis sent a text message to the group, showing a picture of Malik Palmer (defendant Aikeem Palmer's brother) swimming in a truck bed of dimes. In the photo, Malik Palmer appears to be wearing similar clothing as one of the individuals near the tractor trailer containing the dimes, as captured on a cell phone video by an eyewitness who stayed out of sight:



Months after the dime theft, on July 18, 2023, Philadelphia Police tracked a large white box truck, bearing license plate ZVT-6600, to a location on 61st street in the city. Police obtained a search warrant for the vehicle and found a large amount of 2023 dimes, which appeared to be unused, caught in the floorboards and other parts of the truck:



      This box truck was acquired by co-defendant Ronald Byrd for this crew's use in the cargo thefts, as shown in defendant Byrd's iCloud backup data. On March 11, 2023, a person saved as "Woo Sp" in Byrd's contacts messaged Byrd to tell him he was selling his box truck, and that it was owned under another person's LLC. "Woo Sp" sent Byrd a video showing each side of the box truck, including the ZVT-6600 license plate. Byrd said he was interested; he also messaged the mother of his child that day, sharing the video of the box truck and telling her he was going to buy it. The next day, March 12, 2023, Byrd sent a message to a contact saved as "24"—a contact with Savage's phone number. The message said, "Changing the truck game" and included the video of the box truck with license plate ZVT-6600. The copy of the video Byrd sent to Savage's phone included the text: "Spent some money on me for a change."



**2.**      **April 1, 2023 Refrigerator Robbery**

This white box truck was also used in an April 1, 2023 robbery:



On this date at approximately 2:40 a.m., a large tractor trailer was parked in a truck depot in Northeast Philadelphia. The driver was asleep in the cab. Video surveillance captured the white box truck driving into the lot and backing up to a large tractor trailer so that the cargo areas were adjoined. A large black Dodge Ram also pulled into the area. As seen on the surveillance, the Dodge Ram had Florida license plates.

Upon later investigation, it was determined the Dodge Ram was a rental vehicle. The vehicle was rented by Rakeim Savage, Sr.—co-defendant Savage's father. While the vehicle was rented by Rakeim Savage Sr., multiple police officers reported seeing Rakeim Savage, Jr. driving the vehicle in April 2023, and on May 4, 2023, a PPD detective stopped him after he saw him operating the vehicle.

After the box truck pulled in and with the Dodge Ram aside it, six men got out and started moving the refrigerators from the trailer to the box truck. The truck driver got out of his vehicle and started to yell. Two black males participating in the robbery then grabbed the

driver/victim and assaulted him and pushed him under the bed of the trailer. The driver attempted
to get out, but the men pushed him back underneath. After the men loaded all of the refrigerators
onto the white box truck, they stole the victim's wallet, and the offenders fled the scene. The
victim was later shown a photo array to see if he could identify another involved in the robbery.
The victim identified co-defendant Rakeim Savage based on the array.

Shortly after the robbery, Savage sent images of the actual refrigerators stolen (complete
with serial numbers) and links to websites showing the price of the same make and model
refrigerator to the group text chat to coordinate selling the stolen goods:



### 3.    Additional Thefts

The ongoing investigation of the defendants' cargo theft conspiracy identified more and
more crimes committed by the defendants' crew. On April 4, 2023, approximately 8-12 pallets of
frozen snow crab legs were stolen from a trailer parked near 8501 Hegerman Street. The driver
parked his vehicle there and left at approximately 8:40 p.m. The seal on trailer was broken. The
stolen crab legs were valued at approximately $170,000.

Extensive text message evidence shows that the members of the conspiracy committed this theft. After the theft, defendant Aikeem Palmer sent his co-defendants a video showing a box of frozen crab legs:



The box shown in the video matches the boxes shown in PPD photos from the crime scene:



Members of the conspiracy also discussed what happened during the theft by text message. For instance, Savage said, "Bro I was on the truck. Haak [a nickname for defendant Aikeem Palmer] and them right there." The group then argued about prices, splitting proceeds, and how to sell the crab legs. In response to an argument about whether some of the defendants

were cutting others of the action, defendant Aikeem Palmer stated "Put a address we need to know who y'all talkin bout."

Less than 48 hours later, the crew struck again. In the early morning hours of April 6, 2023, Palmer and others stole 34,500 pounds of frozen crab legs valued at approximately $862,500 from a trailer parked at a seafood wholesaler's parking lot on Island Avenue in Philadelphia. The driver of the vehicle was parked and sleeping in his vehicle when he realized that his trailer was moving and cargo was being removed. The driver called police and noted that about 12 to 15 people in 6 or 7 cars were removing thousands of pounds of crabs. Palmer and others removed all of the crabs before police could arrive.

Shortly after the theft, police responded to the scene of an illegal dumping on Gateway Drive in Philadelphia. Officers saw a white Chevrolet Suburban with the tailgate open and multiple individuals running from the car. The Suburban contained 115 boxes of frozen crabs taken from the trailer on Island Avenue. Inside the white Suburban, police recovered a set of bolt cutters and a Caesars Rewards card in the name of co-defendant Salahudin Reddy. A later search for records on the white Suburban revealed that Reddy had rented the vehicle. The day after the crab theft, Reddy reported the vehicle stolen. A state warrant was issued for Reddy on November 18, 2023 for this crab theft. Reddy was arrested by Philadelphia Police on December 27, 2023 after Reddy attempted to flee from police on foot. Phone records show nearly a dozen phone calls between Reddy and other defendants during the time of the theft. In addition, text messages show the defendants messaging each other to plan the theft (including co-defendant Mathis telling co-defendant Saikeen Dixon: "We need the cutters") and sending each other their GPS locations in the area of the theft on Island Avenue.

The crew committed another theft just a few days later. On the night of April 9, 2023,

approximately 103 Samsung 75-inch televisions were stolen from a tractor trailer parked near 12285 McNulty Road. The offenders broke the metal seal off the trailer while the driver was sleeping.

Text messages and phone records again reveal the defendants' participation in the theft. The night of the TV theft, Saikeen Dixon said to Ronald Byrd: "We need the keys to get the cutter s." Later, around 11:48 p.m., Byrd received a call from defendant Aikeem Palmer. Just after midnight, Byrd received a call from co-defendant Haneef Palmer. Around 1:10 a.m., Byrd texted Haneef Palmer: "We got something." Byrd received another call from defendant Aikeem Palmer a few minutes later, and then several more over the next several hours. At 1:40 a.m., Byrd sent a message containing his location to co-defendant Douglas Mathis indicating Byrd was at 12285 McNulty Road. GPS data from Saikeen Dixon's cell phone likewise places him at 12285 McNulty Road around the time of the theft.

The defendants also exchanged messages and phone calls consistent with coordinating the storage of the stolen TVs. At about 2:13 a.m., Saikeen Dixon sent Byrd a GPS location less than two miles from 12285 McNulty Road. Around 6:06 a.m., Byrd sent that exact GPS location to Malik Palmer and exchanged multiple calls with him around this time. Then, around 7:12 a.m., Byrd sent the same GPS location to co-defendant Morris Kanneh. Byrd received a call from Kanneh about 30 minutes later.

Text message evidence also shows the defendants attempting to sell the stolen TVs after the theft. Starting around 9:00 a.m. on April 10, 2023, Byrd started texting multiple contacts that he had 75-inch Samsung TV's for sale. Around 2:24 p.m., Kanneh texted Byrd saying: "Yo bro I got a trap 4 the TVs 15 for 6000 hmu if interested… that's 400 a wop…." Saikeen Dixon likewise texted Douglas Mathis and Mathis's sister: "We got TVs for sell."

Later that night, around 10:52 p.m., Byrd texted Savage a screenshot of a Tweet referencing the sale of both crabs and TVs:



The defendants committed still other thefts, some of which are listed as Overt Acts in Count One of the Superseding Indictment. The extensive text message and other communications between the defendants show their ongoing efforts to coordinate thefts, avoid detection, sell their stolen goods and split the proceeds, and celebrate their scores. For instance, after a theft in July 2023, co-defendant Mathis sent the members of the conspiracy a photo of co-defendant Haneef Palmer posing with cases of stolen Tito's vodka and Morey's frozen seafood:



On top of the text message and other evidence discussed above, investigators obtained cell site location information and tower dump records relating to the thefts committed by the defendants' crew. Cell site data indicates that defendant Aikeem Palmer was among the defendants present for the majority of the thefts charged in the superseding indictment, including the April 13, 2023 dime theft.

The members of the conspiracy were prolific. Even looking solely at the thefts specifically identified in the superseding indictment, the members of the conspiracy are responsible for a loss amount of over $1.5 million stolen from more than 10 victims.

## II.    PRIOR CONVICTIONS

| Conviction | Sentence Imposed |
|---|---|
| Firearms not to be carried without a license, in the Court of Common Pleas, Philadelphia County on September 4, 2008 | The Court sentenced Palmer to one to two years' incarceration followed by two years of probation. |
| Manufacture, delivery or possession with intent to manufacture or deliver controlled substances in the Court of Common Pleas, Philadelphia County on March 4, 2013 | The Court initially sentenced Palmer to time served plus 23 months on April 19, 2013. The Court later sentenced Palmer to 6-23 months' incarceration and 3 years' probation on May 9, 2014, and to 3 years' of probation on May 8, 2015. |
| Manufacture, delivery or possession with intent to manufacture controlled substances in the Court of Common Pleas, Philadelphia County on August 2, 2013 | The Court initially sentenced Palmer to 4 years of probation on August 2, 2013. The Court later sentenced Palmer to 6-23 months' incarceration followed by two years of probation on May 6, 2014. |
| Aggravated assault in the Court of Common Pleas, Philadelphia County on May 8, 2015 | The Court sentenced Palmer to 11.5 to 23 months' incarceration followed by three years of probation. |

## III.    MAXIMUM PENALTIES AND GUIDELINE RANGE

The maximum penalty for Hobbs Act robbery is 20 years' imprisonment, 3 years' supervised release, a $250,000 fine, and a $100 special assessment. 18 U.S.C. § 1951. The maximum penalty for a violation of 18 U.S.C. § 371 is 5 years' imprisonment, 3 years' supervised release, a $250,000 fine, and a $100 special assessment. The maximum penalty for a violation of 18 U.S.C. §§ 641 or 659, or for aiding or abetting such an offense, is 10 years' imprisonment, 3 years' supervised release, a $250,000 fine, and a $100 special assessment. A preliminary guidelines analysis indicates a criminal history category of V and an offense level of 29, meaning the defendant faces a range of 140-175 months in prison. However, because the defendant has prior convictions for drug trafficking and aggravated assault and is currently charged with Hobbs Act robbery, he would likely qualify as a Career Offender, which would result in a guideline range of 210-262 months.

IV.     **ARGUMENT**

Pre-trial detention is appropriate where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Pursuant to 18 U.S.C. § 3142(g), the Court considers the following factors in deciding whether a person should be detained before trial:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . ;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Here, the charges against the defendant are serious, and the evidence supporting them is strong—from the text messages between defendant Palmer and his co-conspirators (complete with pictures, videos, and GPS location data) memorializing both their conspiracy and their substantive crimes, to the cell site location information confirming the conspirators present for each act. Moreover, the defendant's criminal history is extensive, and as a result, he faces a period of significant imprisonment, including an estimated advisory guideline range of 210-262 months.

Magistrate Judge Straw considered each of these factors and determined that pretrial

detention of defendant Palmer is appropriate. That ruling was well supported. The evidence in this case and Palmer's prior record make clear that his release would pose a risk of non-appearance and a danger to the community.

Palmer is charged with dangerous and violent crimes, including Hobbs Act robbery, which is "categorically a crime of violence." *United States v. Stoney*, 62 F.4th 108, 114 (3d Cir. 2023). The defendants' heists are inherently dangerous to the public. This is plain from the April 1, 2023 refrigerator robbery. When a bystander stood in the way of the defendants' crew, they assaulted him and stole his wallet—an attempt to intimidate him so he would not alert the police. While the defendants did not need to use force or weapons in other thefts—because the drivers or other witnesses were asleep or afraid to show themselves—the defendants' willingness to use force when necessary (and to flee) makes their crimes dangerous. And the magnitude of the defendants' scheme shows the extent of the danger they pose: The Superseding Indictment details about a dozen thefts in the span of only about six months, including a spree of five thefts in a two-week period in April 2023. The defendants worked with a large crew and committed crimes all over the City of Philadelphia.

Defendant Palmer notes (at 7) that his brother, Malik Palmer, "mocked" some of his co-defendants for running when the victim of the April 1, 2023 robbery came out of his truck, while two other members assaulted and restrained the driver so the crew could complete the robbery.[1] Palmer seems to argue that this shows that the defendants are *less* dangerous. It shows the opposite. This exchange reveals that the members of the defendants' crew encouraged each other to use force when necessary, and that they would ridicule each other if they failed to do so.

---

[1] Specifically, Malik Palmer sent a message to the group text thread mentioned above and said: "Never seen so many gangsters run from a little ass Mexican wit nothing but draws [sic] on. . . . Driver came out naked everyone ran to they cars."

Indeed, the entire enterprise was like a game to them—they celebrated their scores and news reports about them, posed for pictures with stolen goods, and even planned a "victory dinner" at a casino after the dime heist, all through text messages obtained by the government.

Prior terms of incarceration, probation, and parole have been no deterrent for Palmer. Neither have conditions of court supervision. After being arrested by Philadelphia Police for drug charges (the subject of his March 4, 2013 conviction), Palmer was arrested for illegal firearm possession (the subject of his September 4, 2008 conviction) and again for drug trafficking (the subject of his August 2, 2013 conviction) while awaiting trial. The instant charges show that Palmer has only escalated the scale and complexity of his criminal activity over time.

Defendant Palmer urges in his motion (at 6) that he has "recently found gainful employment." As the government explained at the hearing before Magistrate Judge Straw, Palmer actually told agents when he was arrested (at a dice game, with over $7,500 cash in his possession) that he was *not* employed, and Pennsylvania Department of Labor records show *no* record of employment for defendant Palmer—who is almost 40—whatsoever. Altogether, the evidence shows that, at most, Palmer has worked for a few months in recent memory, which does little to mitigate the danger that he will continue to support himself through criminal activity if released.

Palmer's motion references (at 7) "jewelry" he was wearing when arrested. Specifically, Palmer was arrested with a diamond Rolex and a diamond-studded necklace with a diamond-studded pendant chain with the letters "DB"—which Palmer confirmed to agents stands for "Dirty Block," the name of a North Philadelphia street gang:



Palmer and several of his co-defendants are members of "Dirty Block," and they touted their gang affiliations during the course of the conspiracy. For instance, while texting each other to celebrate the April 13, 2023 dime heist (and talking about "going to live [i.e., Live! Casino] for a victory dinner"), defendant Rakeim Savage sent a picture of himself wearing both a "Dirty Block" chain and a "Zoo Gang" chain, another North Philadelphia criminal organization[2]:

---

[2] Two of Palmer's other co-defendants, Ronald Byrd and Saikeen Dixon, are "Dirty Block" members who, as the Court is aware, are charged in another federal indictment with an armed carjacking of a FedEx Express delivery truck that had been carrying more than 9 kilograms of cocaine. *See United States v. Byrd et al.*, Crim. No. 23-209 (E.D. Pa.). While detained at FDC Philadelphia, Byrd was caught with a contraband cell phone. Records for Byrd's contraband phone show frequent calls with defendant Aikeem Palmer.



Palmer states that he has had the "Dirty Block" chain since at least 2020, but he insists that it has nothing to do with his danger to the community. *See* Mot. at 7. It does. Palmer's ties to the community, which he claims mitigate his risk of danger and non-appearance, are based on criminal activity—including his affiliation with a North Philadelphia street gang, which appears to have motivated the activities of the defendants' crew.

Magistrate Judge Straw considered all of these factors and determined that, based on Palmer's individual record and circumstances, Palmer's continued detention is appropriate pending trial. The government respectfully submits that this Court should reach the same conclusion.

V.      **CONCLUSION**

For the reasons set forth above, the government submits there is no condition or combination of conditions that would reasonably assure the defendant's appearance as required and/or the safety of the community. The government respectfully requests that this Court deny the defendant's motion and enter an Order that he remain detained pending trial.

Respectfully submitted

JACQUELINE C. ROMERO
United States Attorney

*/s/ Timothy M. Lanni*
TIMOTHY M. LANNI
Assistant United States Attorney

*/s/ Alexander B. Bowerman*
ALEXANDER B. BOWERMAN
Special Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served via the Court's electronic filing service on all counsel of record.

*/s/ Alexander B. Bowerman*
ALEXANDER B. BOWERMAN
Special Assistant United States Attorney

Date:  January 31, 2025

21