**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **:** |
| **v.** | **:** |
| | **CRIMINAL NO. 23-454-10** |
| **SALAHUDIN REDDY** | **:** |
| a/k/a "Dean," | |
| a/k/a "Deen" | **:** |

**GOVERNMENT'S CHANGE OF PLEA MEMORANDUM**

**I.    BACKGROUND**

Defendant Salahudin Reddy is charged in a Superseding Indictment with conspiracy, in violation of 18 U.S.C. § 371 (Count One); theft from interstate shipment and possession of items from interstate shipment theft, as well as aiding and abetting, in violation of 18 U.S.C. §§ 659 and 2 (Counts Four, Seven, Eight, Nine, and Ten); and theft of government money and possession of stolen government money, as well as aiding and abetting, in violation of 18 U.S.C. §§ 641 and 2 (Counts Five and Six). The defendant has notified the government through his counsel that he wishes to enter an "open" guilty plea (that is, a guilty plea without a plea agreement) to the Superseding Indictment.

**II.    APPLICABLE STATUTES AND ESSENTIAL ELEMENTS OF THE OFFENSES**

**A.    Conspiracy, 18 U.S.C. § 371 (Count One)**

To prove a defendant guilty of conspiracy, the government must prove the following elements beyond a reasonable doubt:

(1) Two or more persons agreed to commit an offense against the United States as charged in the indictment;

(2) The defendant was a party to or a member of that agreement;

(3) The defendant joined the agreement or conspiracy knowing of its objective to commit an offense against the United States and intending to join together

with at least one other alleged conspirator to achieve that objective;

(4) The defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective, to commit an offense against the United States; and

(5) At some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.

*See* Third Circuit Model Criminal Jury Instruction 6.18.371A; *see also United States v. Jenkins*, No. CR.A. 04-506-2, 2006 WL 3254528, at *2 (E.D. Pa. Nov. 9, 2006) ("To convict for conspiracy, the government must prove beyond a reasonable doubt: (1) an agreement to commit a substantive offense; and (2) an overt act.") (internal citations omitted).

**B.    Theft of and Possession of Goods from an Interstate Shipment, 18 U.S.C. § 659 (Counts Four, Seven, Eight, Nine, and Ten)**

To prove a defendant guilty of theft from an interstate shipment, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant stole, embezzled, unlawfully took, carried away, concealed, or obtained through fraud or deception, the property described in the indictment from a motortruck, trailer, or other vehicle, as alleged in the indictment;

(2) At that time, the property was moving as or a part of an interstate shipment of freight;

(3) The defendant knew the property was not his and had the intent to permanently deprive the owner of the use and benefit of the property; and

(4) The property then had a value of $1,000 or more.

*See* Third Circuit Model Criminal Jury Instructions 6.18.659A; *see also* 18 U.S.C. § 659.

To prove a defendant guilty of possessing stolen goods from an interstate shipment, the government must prove:

(1) Someone stole, embezzled, unlawfully took, carried away, concealed, or obtained through fraud or deception, the property described in the indictment from one of the locations specified in the statute (set forth above);

(2) The defendant bought, received, or possessed such property knowing that it

had been stolen (or embezzled, etc.); and

(3) The property then had a value of $1,000 or more.

Third Circuit Model Criminal Jury Instructions 6.18.659B.

**C.    Theft of Government Money and Receiving Stolen Government Money, 18 U.S.C. § 641 (Counts Five and Six)**

To prove a defendant guilty of theft of government money, the government must prove

the following elements beyond a reasonable doubt:

(1) The defendant knowingly stole money or property of value with the intention of depriving the owner of the use or benefit of the money or property;

(2) The money or property belonged to the United States; and

(3) The value of the money or property was more than $1,000.

Ninth Circuit Model Criminal Jury Instruction 8.39; *see also* Modern Federal Jury Instructions –

Criminal ¶ 23A.01.

To prove a defendant guilty of receiving stolen government money, the government must

prove:

(1) The defendant knowingly received, concealed, or retained money or property of value;

(2) The money or property belonged to the United States;

(3) The defendant knew that the money or property had been stolen, embezzled, or converted;

(4) The defendant intended to convert the money or property to his own use or gain; and

(5) The value of the money or property was more than $1,000.

Ninth Circuit Model Criminal Jury Instructions 8.40.

**D.    18 U.S.C. § 2 (Aiding and Abetting)**

Title 18, United States Code, Section 2 makes it a crime to aid or abet the commission of

- 3 -

another crime. To prove a defendant guilty of aiding and abetting, the government must prove:

    (1)  The principal committed the offense by committing each element of the offense;

    (2)  The defendant knew that the offense was being committed or was going to be committed by the principal;

    (3)  The defendant knowingly did some act for the purpose of aiding, assisting, facilitating, or encouraging the principal in committing the offense, and with the intent that the principal commit the offense; and

    (4)  The defendant performed an act in furtherance of the offense.

*See* Third Circuit Model Criminal Jury Instruction § 7.02.

### E.    Responsibility for Substantive Offenses Committed by Co-Conspirators (*Pinkerton* Liability)

The government may prove a defendant guilty of a substantive offense based on the legal rule that each member of a conspiracy is responsible for crimes and other acts committed by the other members, as long as those crimes and acts were committed to help further or achieve the objective of the conspiracy and were reasonably foreseeable to the defendant as a necessary or natural consequence of the agreement. In other words, under certain circumstances, the act of one conspirator may be treated as the act of all. This concept, often referred to as the *Pinkerton* doctrine, means that all the conspirators may be convicted of a crime committed by any one or more of them, even though they did not all personally participate in that crime themselves.

To prove a defendant guilty of a substantive offense under the *Pinkerton* doctrine, the government must prove:

(1) The defendant was a member of the conspiracy charged in the indictment;

(2) While the defendant was still a member of the conspiracy, one or more of the other members of the conspiracy committed the offense charged in the substantive count of the indictment, by committing each of the elements of that offense;

(3) The other member(s) of the conspiracy committed this offense within the scope of the unlawful agreement and to help further or achieve the objective(s) of the conspiracy; and

(4) This offense was reasonably foreseeable to or reasonably anticipated by the defendant as a necessary or natural consequence of the unlawful agreement. The government does not have to prove that the defendant specifically agreed or knew that this offense would be committed. However, the government must prove that the offense was reasonably foreseeable to the defendant, as a member of the conspiracy, and within the scope of the agreement as the defendant understood it.

*See* Third Circuit Model Criminal Jury Instruction § 7.03.

### III.    MAXIMUM PENALTIES

The maximum sentence for conspiracy is 5 years' imprisonment, up to 3 years' supervised release, a $250,000 fine, and a $100 special assessment. *See* 18 U.S.C. § 371.

The maximum sentence for theft from an interstate shipment, possession of stolen goods from interstate shipment theft, theft of government money, or possession of stolen government money, is 10 years' imprisonment, up to 3 years' supervised release, a $250,000 fine, and a $100 special assessment. *See* 18 U.S.C. §§ 641, 659.

Thus, the total maximum penalty is: a term of imprisonment of 75 years, a term of supervised release of 3 years, a fine of $2,000,000, and a special assessment of $800. Restitution and forfeiture may also be ordered.

### IV.    FACTUAL BASIS FOR THE PLEA

If this case were to proceed to trial, the government would prove the following facts, among others, through witness testimony and exhibits. This memorandum sets forth only the essential facts that would need to be proved to establish the elements of the offenses charged.

Between January 1 and July 31, 2023, defendant Salahudin Reddy conspired with his co-defendants to steal goods moving as part of interstate shipments located on tractor trailers around Philadelphia. While a trailer was unattended overnight, or while the driver was asleep, the members of the conspiracy participating in the theft would use bolt cutters and other tools to break into the trailer and steal the goods inside. The members of the conspiracy would then offer the goods for sale to contacts around Philadelphia.

The four thefts that are the subject of the substantive counts charged against defendant Reddy in the Superseding Indictment are described below.

### A. April 13, 2023 Dime Theft

A tractor trailer departed the United States Mint in Philadelphia on the evening of April 12, 2023 with over $750,000 dollars' worth of newly minted 2023 U.S. dimes. The dimes were scheduled to be transported to Florida for distribution. The driver of the truck picked up the dimes on the night of April 12 and parked in a Walmart parking lot off of I-95 near 4301 Byberry Road. The driver then went to sleep at his home in Philadelphia.

That night, and into the early morning on April 13, 2023, defendant Reddy and multiple co-conspirators drove to this location, used tire irons to break into the trailer, and unloaded over $230,000 worth of dimes. The members of the conspiracy accomplished this by using large trash cans to transfer the dimes to other vehicles. Thousands of dimes were left strewn at the scene after the theft.

The morning after the dime theft, co-defendant Rakeim Savage sent an admission to six other co-conspirators (part of a months-long group text) stating "We made it!" with a screenshot of an Instagram post detailing the theft:

- 6 -



In this same group chat, co-defendant Douglas Mathis sent a text message to the group, showing a picture of co-defendant Malik Palmer swimming in a truck bed of dimes. In the photo, Palmer appears to be wearing similar clothing as one of the individuals unloading dimes from the tractor trailer (as captured on a video from a bystander's cell phone camera):



Cell-site data indicates that defendant Reddy's cell phone (ending in x1144) was present in the area of the dime theft around the time of the theft. And phone records show he was in contact with his co-defendants during the theft. He called co-defendant Mathis at approximately 2:06 a.m., and he received calls from co-defendant Haneef Palmer at approximately 5:10 a.m. and 6:45 a.m.[1]

Co-defendant Malik Palmer sent his co-conspirators a link to a "Money Weight Calculator" after the theft, an online tool that would allow the crew to calculate how much a certain quantity of dimes would weigh, and to calculate the value of a certain weight of dimes. Then, in May 2023, Palmer opened an account with Citadel Bank and began depositing thousands of dimes at a time. After bank employees reported the suspicious transactions, police

---

[1] Records for defendant Reddy's cell phone show that between January 2023 and September 2023, Reddy had well over 800 call events with members of the conspiracy.

recovered many of the stolen dimes, as well as surveillance footage of Palmer making the

deposits:



Months after the dime theft, on July 18, 2023, Philadelphia police tracked a large white

box truck bearing license plate ZVT-6600 to a location on 61st street in the city. Police obtained

a search warrant for the truck and found dozens of new 2023 U.S. dimes, which appeared to be

unused, caught in the floorboards and other parts of the truck.

This box truck was acquired by co-defendant Ronald Byrd for this crew's use in the

cargo thefts, as shown by text messages obtained from Byrd's iCloud backup data. On March 11,

2023, a person saved as "Woo Sp" in Byrd's contacts messaged Byrd to tell him he was selling

his box truck, and that it was owned under another person's LLC. "Woo Sp" sent Byrd a video

showing each side of the box truck, including the ZVT-6600 license plate. Byrd said he was

interested; he also messaged his significant other that day, sharing the video of the box truck and

telling her he was going to buy it. The next day, March 12, 2023, Byrd sent a message to a

contact saved as "24"—a contact with co-defendant Rakeim Savage's phone number. The

message said, "Changing the truck game" and included the video of the box truck with license

plate ZVT-6600. The copy of the video Byrd sent to Savage's phone included the text: "Spent

some money on me for a change."



### B.    April 4, 2023 Crab Leg Theft

As law enforcement investigated the April 13, 2023 dime theft, investigators identified

more and more crimes committed by the defendants' crew. On April 4, 2023, thousands of

pounds of frozen snow crab legs were stolen from a trailer parked near 8501 Hegerman Street.

The driver parked his vehicle there and left at approximately 8:40 p.m. The seal on trailer was

broken. The wholesale value of the crab legs was over $200,000.

Extensive text message evidence shows that the members of the conspiracy committed

this theft. After the theft, co-defendant Aikeem Palmer sent his co-defendants a video showing a box of frozen crab legs. The box shown in the video matches the boxes shown in police photos from the crime scene.

Members of the conspiracy also discussed what happened during the theft by text message. For instance, co-defendant Savage said, "Bro I was on the truck. Haak [a nickname for co-defendant Aikeem Palmer] and them right there." The group then argued about prices, splitting proceeds, and how to sell the crab legs. Co-defendant Malik Palmer said, "Y'all [n-words] knew kill [a nickname for co-defendant Saikeen Dixon] was up there waiting he was next y'all go in front of him then y'all was supposed to go get the truck so we can load up y'all wanted to load up so y'all don't have to split it."

Cell site data for defendant Reddy's cell phone (x1144) shows he was in the area of 8501 Hegerman Street around the time of the crab leg theft. He was in constant contact with his co-conspirators by phone during the theft. Between 1:33 a.m. and 5:18 a.m. on April 4, 2023, Reddy had approximately 11 calls with co-defendants Malik Palmer, Mathis, and Savage.

### C.     April 6, 2023 Crab Leg Theft

Less than 48 hours later, the defendants' crew struck again. In the early morning hours of April 6, 2023, defendant Reddy and his co-conspirators stole 34,500 pounds of frozen crab legs, again with a wholesale value of over $200,000, from a trailer parked at a seafood wholesaler's parking lot at 3601 Island Avenue in Philadelphia. The driver of the vehicle was parked and sleeping in his vehicle when he awoke to movement in his trailer, and he could tell his cargo was being removed. The driver called police and reported that about 12 to 15 people in 6 or 7 cars were removing thousands of pounds of crabs. Reddy and others removed all of the crabs before police could arrive.

Shortly after the theft, police responded to the reports of illegal dumping on Gateway Drive in Philadelphia. Officers saw a white Chevrolet Suburban with the tailgate open and multiple individuals running from the car. The Suburban contained 115 boxes of frozen crabs taken from the trailer on Island Avenue. Inside the white Suburban, police recovered a set of bolt cutters and a Caesars Rewards card in the name of Salahudin Reddy. A later search for records on the white Suburban revealed that defendant Reddy had rented the vehicle. The day after the crab theft, Reddy reported the vehicle stolen. A state warrant was issued for Reddy on November 18, 2023 for this crab theft. Reddy was arrested by Philadelphia police on December 27, 2023 after Reddy attempted to flee from police on foot.

Cell-site data for defendant Reddy's phone (x1144) confirms that he was in the area of 3601 Island Avenue around the time of the theft. And phone records show nearly a dozen phone calls between Reddy and other defendants during the time of the theft, including about 10 calls with co-defendant Malik Palmer. In addition, text messages show the defendants messaging each other to plan the theft (including co-defendant Mathis telling Saikeen Dixon: "We need the cutters") and sending each other their GPS location in the area of the theft on Island Avenue.

### D.    April 10, 2023 Samsung TV Theft

The defendants' crew committed another theft just a few days later. On the night of April 9, 2023, approximately 103 Samsung 75-inch televisions were stolen from a tractor trailer parked near 12285 McNulty Road. The offenders broke the metal seal off the trailer while the driver was sleeping.

Text messages and phone records again reveal the defendants' participation in the theft. The night of the TV theft, co-defendant Saikeen Dixon said to co-defendant Ronald Byrd: "We need the keys to get the cutter s." Later, around 11:48 p.m., Byrd received a call from co-

defendant Aikeem Palmer. Just after midnight, Byrd received a call from co-defendant Haneef Palmer. Around 1:10 a.m., Byrd texted Haneef Palmer: "We got something." Byrd received another call from Aikeem Palmer a few minutes later, and then several more over the next several hours. At 1:40 a.m., Byrd sent a message containing his location to co-defendant Douglas Mathis indicating Byrd was at 12285 McNulty Road. GPS data from Saikeen Dixon's cell phone likewise places him at 12285 McNulty Road around the time of the theft.

Cell site data again places defendant Reddy in the area of 12285 McNulty Road during the time of the theft. And phone records show he had 11 calls with members of the conspiracy between approximately 1:01 a.m. and 3:20 a.m. on April 10, 2023—9 calls with co-defendant Savage, as well as calls with co-defendants Haneef Palmer and Aikeem Palmer.

The defendants also exchanged messages and phone calls consistent with coordinating the storage of the stolen TVs. At about 2:13 a.m., co-defendant Saikeen Dixon sent Byrd a GPS location less than two miles from 12285 McNulty Road. Around 6:06 a.m., Byrd sent that exact GPS location to defendant Malik Palmer and exchanged multiple calls with him around this time. Then, around 7:12 a.m., Byrd sent the same GPS location to co-defendant Morris Kanneh. Byrd received a call from Kanneh about 30 minutes later.

Text message evidence also shows the defendants attempting to sell the stolen TVs after the theft. Starting around 9:00 a.m. on April 10, 2023, Byrd started texting multiple contacts that he had 75-inch Samsung TV's for sale. Around 2:24 p.m., Kanneh texted Byrd saying: "Yo bro I got a trap 4 the TVs 15 for 6000 hmu if interested… that's 400 a wop…." Saikeen Dixon likewise texted Douglas Mathis and Mathis's sister: "We got TVs for sell."

Later that night, around 10:52 p.m., Byrd texted Savage a screenshot of a Tweet referencing the sale of both crabs and TVs:

- 13 -



***

For each one of the four thefts described above, the stolen goods had a value exceeding $1,000 and were moving as part of an interstate shipment of freight. The members of the conspiracy also committed the additional thefts listed as Overt Acts in Count One of the Superseding Indictment. In total, the members of the conspiracy stole goods with a value exceeding $1.5 million from more than 10 victims.

## V.    PLEA AGREEMENT

The defendant is entering an "open" guilty plea (that is, a guilty plea without a plea agreement). The government will file a supplemental statement regarding the defendant's "open" guilty plea under seal.

## VI.    CONCLUSION

The government requests that the Court conduct a hearing under Federal Rule of

- 15 -

Criminal Procedure 11 and if warranted then accept the defendant's plea of guilty.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Alexander B. Bowerman*
ALEXANDER B. BOWERMAN
CHRISTOPHER DIVINY
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this Change of Plea Memorandum has been served by electronic mail on:

Andrew Montroy, Esq.
amontroy@gmail.com

*/s/ Alexander B. Bowerman*
ALEXANDER B. BOWERMAN
Assistant United States Attorney

DATED:  February 26, 2026