## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :

      v. : CRIMINAL NO. 23-454-10

SALAHUDIN REDDY :

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Salahudin Reddy was an active participant in the large-scale organized cargo theft conspiracy charged in this case. He committed many of the biggest tractor-trailer thefts, including the hallmark heist of over $230,000 worth of U.S. dimes on April 13, 2023. The crimes he committed as part of this conspiracy are only the latest in his long line of criminal offenses.

Reddy has shown himself wholly unwilling to respect the law. Reddy was a fugitive for more than eight months before he was arrested in this case, and when the FBI found him, he fled the apartment he was hiding in, climbed to the roof, and jumped to an adjoining building to avoid capture. He was found hiding in another apartment he had broken into. Reddy also has multiple pending charges in Pennsylvania and New Jersey state courts for firearm and theft offenses, and Reddy was a fugitive in those jurisdictions, too, when he was apprehended. He failed to appear for multiple court dates and had multiple bench warrants out for his arrest.

For these reasons, the government recommends a sentence of incarceration within the advisory guideline range of 84-105 months, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.      BACKGROUND

The facts of this case are set forth in the government's change of plea memorandum. Dkt. No. 338. In summary, between January 1 and July 31, 2023, defendant Salahudin Reddy

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

conspired with his co-defendants to steal goods moving as parts of interstate shipments located on tractor trailers around Philadelphia. While a trailer was unattended overnight, or while the driver was asleep, the members of the conspiracy participating in the theft would use bolt cutters and other tools to break into the trailer and steal the goods inside. The members of the conspiracy would then offer the goods for sale to contacts around Philadelphia. Reddy admitted to participating in thefts of hundreds of thousands of dollars' worth of frozen crab legs on April 4, 2023 and again on April 6, 2023; the theft of over $360,000 worth of Samsung televisions on April 10, 2023; and, as mentioned, the theft of over $230,000 worth of U.S. dimes on April 13, 2023. The members of the conspiracy committed numerous other thefts, stealing goods with a total estimated value of more than $1.5 million from more than 10 victims.

## II.        SENTENCING CALCULATION

### A.        Statutory Maximum Sentence

The maximum sentence for conspiracy is 5 years' imprisonment, up to 3 years' supervised release, a $250,000 fine, and a $100 special assessment. *See* 18 U.S.C. § 371.

The maximum sentence for theft from an interstate shipment, possession of stolen goods from interstate shipment theft, theft of government money, or possession of stolen government money, is 10 years' imprisonment, up to 3 years' supervised release, a $250,000 fine, and a $100 special assessment per count. *See* 18 U.S.C. §§ 641, 659.

Thus, the total maximum penalty is: a term of imprisonment of 75 years, a term of supervised release of 3 years, a fine of $2,000,000, and a special assessment of $800. Restitution and forfeiture may also be ordered.

B.      Sentencing Guidelines Calculation

The Probation Office correctly calculated Reddy's advisory guideline range of imprisonment as 84-105 months.

Reddy is in criminal history category V. In addition to multiple juvenile convictions (none of which result in any criminal history points), Reddy has a 2007 conviction for carrying a firearm without a license, which does not result in any criminal history points. He was arrested again for carrying a firearm without a license in March 2007, then again in October 2007, and he pled guilty in both cases in April 2008. He was sentenced to 3.5-7 years in prison but paroled a few days later. Each of these convictions results in 3 criminal history points. Reddy was then convicted of a marijuana offense in New Jersey in 2016, for which he paid a fine. This conviction results in 1 criminal history point. Reddy was convicted of another firearm offense in 2018, for which he was sentenced to 2.5-5 years in prison followed by 5 years of probation. This conviction results in 3 criminal history points. Reddy remained on supervision when he committed the instant offenses, adding another criminal history point.[2] Thus, Reddy's total criminal history score is 11, establishing a criminal history category of V. PSR ¶ 80-98.

Reddy has multiple pending charges. In the Philadelphia Court of Common Pleas, Reddy has pending charges for a firearm offense allegedly committed in February 2023, and forgery and theft offenses allegedly committed in March 2023. PSR ¶¶ 100-103. In New Jersey state

---

[2] Reddy objected to this additional point, arguing that he was "no longer under supervision" when the offenses occurred. *See* PSR, at p. 34. He was. Reddy's criminal conduct in this case began in January 2023, and he was on state parole until February 22, 2023 for his 2018 firearms conviction. *See* PSR, at p. 35. Reddy also had a 5-year term of probation set to follow his incarceration and parole for that conviction. PSR ¶ 94. However, even without this additional point for committing the instant crimes while on supervision, Reddy's criminal history score is 10, which would still establish a criminal history category of V.

court, Reddy faces theft and burglary charges. PSR ¶¶ 104-105. Reddy also faces local charges

from when he broke into a person's apartment while trying to flee from law enforcement. PSR

¶¶ 106-107.

The base offense level is 6. PSR ¶ 68. The offense level is increased by 16 because the

loss amount is more than $1.5 million. PSR ¶ 69.[3] The offense level is increased by 2 levels

because the offense involved 10 or more victims, and another 2 levels because the offense

involved "an organized scheme to steal or to receive stolen . . . goods or chattels that are part of a

cargo shipment." PSR ¶¶ 70-71.[4] The offense level is reduced by 3 because Reddy accepted

---

[3] Reddy objected to the loss calculation in the PSR, asserting that any overvaluation of $8,000 or more would reduce the loss enhancement. *See* PSR at p. 34. But Reddy has not demonstrated that any valuation of stolen goods is not a reasonable estimate. Reddy's objection stated, without further explanation, "the Samsung TVs appear to have pricing inflated $78 less [sic] per unit." *See id.* But the valuation of the Samsung TVs stolen on April 10, 2023 came straight from the invoice issued by Samsung for the TVs (listing a net unit price of $3,587 for each of the 103 stolen TVs, for a total value of $369,461") as well as an internal claims document reflecting the same values. For thefts where similar documentation was not available, the government researched wholesale prices and, to be conservative, applied values in the "low-to-mid range." PSR ¶ 58. For instance, historical data indicates that the wholesale price of shrimp ranged from $4.62 to $44.62 per pound in 2023, and the government applied a value of $10 per pound to the more than 26,000 pounds of shrimp stolen on April 26, 2023. A reasonable valuation of the extensive and eclectic array of goods stolen by the defendants could easily be higher.

[4] Reddy objected to the "organized scheme" enhancement, asserting that tractor trailers are not encompassed within the meaning of "cargo shipment" in U.S.S.G. § 2B1.1(b)(15). *See* PSR, at p. 34. This objection is meritless. The plain meaning of "cargo" would include goods shipped by tractor trailer—a common method of transporting goods in the United States. *See, e.g.*, CARGO, Black's Law Dictionary (12th ed. 2024) ("Goods transported by a vessel, airplane, *or vehicle*[.]" (emphasis added)). Reddy points to Application Note 12 of Section 2B1.1, which provides that the term "cargo shipment" "*includes* cargo transported on a railroad car, bus, steamboat, vessel, or airplane." U.S.S.G. § 2B1.1 App. Note 12 (emphasis added). The use of the term "includes" indicates that the commentary sets forth a non-exhaustive list of the kinds of cargo covered by the enhancement. The commentary does not limit the term "cargo" to exclude cargo transported by tractor trailer from the enhancement, nor could it. *See United States v. Miller*, 172 F.4th 242, 247 (3d Cir. 2026) (guideline commentary cannot "chang[e] the meaning of the text" (quotation marks omitted)). Further, the history of the Section 2B1.1(b)(15) enhancement indicates that it was added in 2007 pursuant to the PATRIOT Reauthorization Act to "respond[] to concerns

*continued . . .*

responsibility, resulting in an offense level of 23. PSR ¶¶ 75-79. Thus, the applicable guideline range of imprisonment, based on a criminal history category of V and an offense level of 23, is 84-105 months. PSR ¶ 157.

III.    ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public

---

regarding the increased instances of organized cargo theft operations," and was intended to "expand[] the scope of this enhancement to cover cargo theft and . . . *ensure application of the enhancement is consistent with the scope of 18 U.S.C. §§ 659 and 2313.*" FCJ Federal Sentencing Guidelines Manual Amendment No. 699 (2007) (emphasis added). And 18 U.S.C. § 659—the primary statute at issue here—plainly extends to goods stolen from a "motortruck, trailer, or other vehicle." The 2B1.1(b)(15) enhancement extends to such goods, too, and therefore applies here.

from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

> A.    Consideration of the 3553(a) Factors Regarding Imprisonment

Reddy engaged in serious offenses—and quite a few of them. Reddy was an active participant in an organized scheme of relentless cargo thieves. For months, Reddy and his co-conspirators created chaos and fear for truck drivers while enriching themselves with stolen goods. Reddy and his co-conspirators committed more than a dozen cargo thefts, stealing more than $1.5 million worth of goods—including over $1 million in a two-week span in April 2023 alone.

That spree saw Reddy and his co-conspirators pillage a tractor trailer carrying 34,500 pounds of frozen crab legs on April 6, 2023. Thanks to the defendants' manpower and coordination, they were able to steal the whole load. (They came up just short on April 4, 2023, stealing only about 27,780 pounds of frozen crab legs in that theft.) For his part on April 6, Reddy rented a white Chevrolet Suburban to use in the theft. When police responded to reports of short-dumping and found Reddy and his co-conspirators at the Gateway Towers apartment complex, Reddy fled, and (falsely) reported the Suburban stolen the next day. Just days later, Reddy and his co-conspirators stole a truckload of Samsung 75-inch televisions—more than 100 of them. And just days after that, they stole more than $234,000 worth of U.S. dimes. According

to the online currency weight calculator the defendants used (omnicalculator.com/everyday-life/money-weight), that is more than 11,700 pounds of dimes.

These were massive heists. Executing them required extensive coordination among a large group of criminal associates—evident from the text messages and phone records collected in this case—as well as large vehicles, like the box truck the defendants used in the thefts. And the defendants carried on ransacking tractor trailers for the better part of 2023. They scouted victims, stole as much cargo as they could get their hands on, and found buyers for their stolen wares to profit from their crimes. Each theft posed a risk of harm to the driver, as well as any bystander, security guard, or law enforcement officer who might have stood in the defendants' way. Simply put, the qualitative and quantitative seriousness of the defendants' crimes warrants a serious penalty.

Reddy's long career of crime strengthens the need for a serious penalty in this case. Reddy has four prior convictions for firearm offenses, dating back to 2006. Reddy also has multiple pending cases against him. Prior prison sentences have not deterred Reddy, nor have the terms of court supervision. He was on pretrial release when he was arrested for his second offense, and he was on pre-sentencing release when he was arrested for his third offense. Reddy was then on supervision from his most recent firearm conviction when he committed the offenses in this case.

In addition to repeatedly committing crimes, Reddy has repeatedly attempted to avoid responsibility for them. He fled on foot from Philadelphia Police in December 2023 when they tried to arrest him on a local warrant for the April 6, 2023 crab theft. Later, in September 2024, Reddy attempted to flee from New Jersey State Police when they tried to stop him and several accomplices from committing another cargo theft—and in doing so, Reddy and his brother drove

into a police car, injuring a state police detective. Reddy then fled from the FBI when he was arrested in this case in August 2025, after being a fugitive for more than eight months. When the agents attempted to arrest Reddy, he fled the apartment he was hiding in, climbed to the roof, and jumped to an adjoining building to avoid capture. He then broke into a third-floor bedroom of a residence and hid in a closet, where he was apprehended.[5]

Meanwhile, Reddy has no significant record of gainful employment. PSR ¶¶ 150-152.[6] Rather, his record shows repeated refusals to rehabilitate. His persistent and pernicious criminal activity warrants a significant penalty in this case.

For these reasons, a term of imprisonment in the applicable guideline range is necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2). Furthermore, a guideline sentence of incarceration would afford adequate deterrence to others who would commit a similar offense, and protect the public from further crimes of Reddy, for at least as long as he remains incarcerated. *Id.* In addition, adherence to the recommended guideline range would assure that Reddy's sentence is consistent with those imposed nationwide on similarly situated offenders, thus complying with Section 3553(a)(6) and avoiding undue disparity.

---

[5] Reddy also failed to appear for proceedings in three of his open cases (a motions hearing on September 30, 2024 and a waiver trial on November 4, 2024, both in Philadelphia, as well as a New Jersey appearance on August 11, 2025) while he was a fugitive, leading to the issuance of three bench warrants for his arrest.

[6] According to the PSR, Reddy reported in a November 2012 state parole review that he "always sold marijuana to support himself." PSR ¶ 152. Reddy objected, urging that he never stated that he sold marijuana to support himself. *See* PSR, at p. 35. But when Reddy was arrested, law enforcement found more than 2.8 kilograms (more than 6 pounds) of marijuana packaged for distribution in the apartment Reddy was staying in, indicating that Reddy was trafficking drugs to support himself while attempting to evade capture.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).

## B.      Restitution

A restitution order is appropriate and, indeed, mandatory in this case. *See* 18 U.S.C. § 3663A. However, the government is still investigating the extent to which the victims' losses have been reimbursed by insurance, which could affect to whom restitution is owed. The government is also investigating the exact amount of dimes recovered during the police investigation of the April 13, 2023 theft (since some of the recovered dimes were not previously counted when preserved as evidence), and the current ownership of the dimes. As a result, the government respectfully submits that the Court should schedule a date within 90 days after the date of sentencing for a final determination on restitution, pursuant to 18 U.S.C. 3664(d)(5).

## C.      Supervised Release

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18

U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception

of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to

promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3)

("the kinds of sentences available"), which do not apply with regard to supervised release

decisions.

In this case, a term of supervised release of at least 2 years is warranted. Supervision

following release from imprisonment is warranted to aid Reddy's reentry to society, particularly

given his lack of employment history, and to protect the public. A term of supervised release in

this case advances the goals of sentencing to deter criminal conduct, 18 U.S.C. § 3553(a)(2)(B),

protect the public, *id.* § 3553(a)(2)(C), and assure that Reddy pursues education and vocational

efforts that promote rehabilitation, *id.* § 3553(a)(2)(D). Further, Reddy has a history of heavy

controlled substances use. *See* PSR ¶¶ 143-147. The Sentencing Commission explains: "In a case

in which a defendant sentenced to imprisonment is an abuser of controlled substances or alcohol,

it is highly recommended that a term of supervised release also be imposed." § 5D1.1 app. note

3. Supervised release would ensure Reddy addresses any substance abused issues after his

release.

This assessment also supports imposition of all of the mandatory and standard conditions

of supervised release listed in Section 5D1.3, as well as these additional conditions: that the

defendant submit to drug testing and attend substance abuse treatment as directed.

## IV.      CONCLUSION

The government's final recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Alexander B. Bowerman*
ALEXANDER B. BOWERMAN
CHRISTOPHER DIVINY
Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Sentencing Memorandum has been served by electronic filing on all counsel of record.

*/s/ Alexander B. Bowerman*
ALEXANDER B. BOWERMAN
Assistant United States Attorney

DATED:  June 5, 2026